**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NOEL M., | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:25-CV-00800-NCC |
| FRANK BISIGNANO, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Noel M. ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) (Doc. 5).

## I. PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on June 11, 2019 (Doc. 19 at 1). Plaintiff received a Notice of Disapproved Claims on February 11, 2020. *Id*. On May 5, 2020, a reconsideration decision affirmed the previous denial of benefits. *Id*. On May 11, 2020, Plaintiff timely filed a Request for Hearing by an Administrative Law Judge ("ALJ"). *Id*. After a hearing, the ALJ issued an unfavorable decision on August 31, 2022. *Id*. Plaintiff timely filed a request for review of the hearing decision on September 16, 2022. *Id*. On March 31, 2023, the Appeals Council denied Plaintiff's request for review. *Id*. On May 30, 2023, Plaintiff filed a complaint with the

United States District Court for the Eastern District of Missouri (Tr. 2304-5). On January 12, 2024, Defendant filed a Motion to Reverse and Remand, stating that agency counsel determined remand was necessary for further evaluation of Plaintiff's claim (Tr. 2308). On January 19, 2024, the undersigned granted Defendant's motion and reversed and remanded the case (Tr. 2311-2). On March 26, 2024, the Appeals Council issued an order remanding the case back to the ALJ (Tr. 2313). Pursuant to the District Court remand order, the Appeals Council directed the ALJ to further consider Plaintiff's maximum residual functional capacity ("RFC") during the entire period at issue and provide a rationale with specific references to evidence in the record in support of the assessment limitations, evaluate the medical source opinion(s) and prior administrative medical findings, and obtain supplemental evidence from a vocational expert (Tr. 2205). Additionally, the subsequent claim for Title XVI benefits filed on July 4, 2023, was to be consolidated. *Id*. After a second hearing, by decision dated March 20, 2025, the ALJ again found Plaintiff not disabled. *Id*. As such, the ALJ's second decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since June 4, 2019, the application date (Tr. 2207). The ALJ found Plaintiff had the following severe impairments: generalized anxiety disorder, panic disorder, attention deficit hyperactivity disorder (ADHD), depressive, not otherwise specified, psoriatic arthritis, chronic migraines, obesity, plantar fasciitis, irritable bowel syndrome (IBS), left ear tinnitus, and left ear mild to moderate sensorineural hearing loss. *Id*. The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I (20

C.F.R. 416.920(d), 416.925, and 416.926) (Tr. 2208). After careful consideration of the entire record, the ALJ determined that Plaintiff has the RFC to:

> [P]erform sedentary work as defined in 20 C.F.R. 416.967(a) except she can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. She can occasionally kneel, crouch and crawl. She must avoid extreme cold, extreme heat, wetness, vibrations and hazards, such as unprotected heights and dangerous machinery. The claimant must avoid work in a loud work environment, defined as noise intensity levels 4 and 5 and louder, per the Selected Characteristics of Occupations (SCO). She must avoid work that requires operating a motor vehicle. The claimant can have occasional exposure to concentrated fumes, odors, gases, dusts and poor ventilation. The claimant can frequently handle, finger, and feel with the bilateral hands. She is able to complete simple, routine tasks with minimal changes in job duties and setting. She cannot perform work requiring hourly quotas and can have occasional interaction with the general public, co-workers, and supervisors.

(Tr. 2211). The ALJ found that Plaintiff was 26 years old on the application date and that Plaintiff has at least a high school education (Tr. 2229). The ALJ additionally found that transferability of job skills is not an issue here because Plaintiff does not have past relevant work. *Id*. The ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id*. The ALJ identified three applicable jobs: optical goods assembler, blower machine tender, and call out operator (Tr. 2230). The ALJ therefore concluded that Plaintiff has not been under a disability since June 4, 2019, the date the application was filed. *Id*.

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this

sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id*. "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id*.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national

economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3.

If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

## IV. DISCUSSION

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite specific portions of the transcript as needed to address the parties' arguments. In her appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff argues that the ALJ failed to properly evaluate medical opinion evidence under the governing regulations (Doc. 19 at 3). Second, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's pain (Doc. 19 at 10). Third, Plaintiff argues that the RFC lacks limitations for Plaintiff's migraine headaches (Doc. 19 at 13). Because the Court agrees that the RFC lacks limitations for Plaintiff's migraine headaches, the Court will decide that issue alone.

### A. The standard for determining RFC

"When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments and determine the claimant's RFC." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). A claimant's RFC is defined as the most the claimant can do despite her limitations. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). When determining the RFC, the ALJ must consider "all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence." *Derryberry v. Berryhill*, No. 1:16-CV-3 JAR, 2017 WL 1194458 at *8 (E.D. Mo. Mar. 30, 2017). While it is the ALJ's responsibility to determine the claimant's RFC, the claimant bears the burden of establishing her RFC. *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (citing *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)). If the Court finds that the ALJ's RFC determination is not supported by substantial evidence, remand is required.

*Brown v. Colvin*, No. 4:14-CV-00288-NKL, 2014 WL 6750041 at *4 (W.D. Mo. Dec. 1, 2014).

**B. Plaintiff's history of migraine headaches**

Having reviewed the record, the Court finds significant evidence of Plaintiff's extensive history of migraine headaches. In April 2020, Plaintiff reported experiencing migraine headaches three to four days per week, with severity ranging from 7/10 to 10/10 pain (Tr. 2109). Plaintiff described the pain as "pressure … feeling like her head was going to explode" during an April 21, 2020, visit to address her chronic migraine headaches. *Id*. In October 2022, Plaintiff reported that she was experiencing eighteen migraine days per month, and that her migraine headaches were associated with nausea, photophobia, phonophobia, fatigue, and flashing lights aura (Tr. 191). Plaintiff reported the same or similar associated symptoms on numerous occasions from 2019 through 2024 (Tr. 743, 873, 2076, 2109, 4239, 4431). *See Palmer v. Colvin*, No. 8:15CV255, 2016 WL 3983258 at *6 (D. Neb. July 25, 2016) (citing SSR 96-7P) ("The consistency of the claimant's various statements and the consistency between statements and other evidence provides a "strong indication" of the credibility of the claimant's subjective claims."). In May 2023, a provider noted worsening headaches that lasted for several days for which Plaintiff had been seen and treated in the emergency room on multiple occasions (Tr. 3568). In May 2024, Plaintiff reported experiencing a migraine headache rated at 10/10 pain with associated nausea and photophobia (Tr. 2684). Her neurologist sent Plaintiff to the emergency room for further evaluation, where she received medication to address her "severe migraine" (Tr. 2686, 2717).

A review of the longitudinal record shows Plaintiff received a variety of treatment for migraines, including treatment considered to be "aggressive" when considered by courts. *See Blackburn v. Berryhill*, No. 16-3140-CV-S-ODS, 2017 WL 1968320 at *3 (W.D. Mo. May

12, 2017) (identifying Botox injections as "aggressive treatment" for migraines). Plaintiff was prescribed multiple medications, including Topamax, Sumatriptan, and Amitriptyline (Tr. 192). In May 2023, a medical provider noted that Plaintiff "has failed multiple medication[s]" for treatment of migraine headaches (Tr. 3573). Moreover, the record reflects that Plaintiff's inconsistency in taking medication was a consequence of her intermittent lack of insurance coverage (Tr. 204), discrepancies in prior authorization (Tr. 2747), or the decision to stop certain medications when pregnant or breastfeeding (Tr. 260-2). Review of the whole record does not show consistent noncompliance. *See Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1029 (E.D. Mo. 2017) (finding that isolated instances of medication noncompliance did not support an ALJ's finding on consistent noncompliance). Further, the record does not establish that Plaintiff's migraine headaches are well-controlled when she is taking medication. Despite seeking emergency medical care, trying a variety of medications, and receiving Botox injections, Plaintiff was noted to have experienced "no significant improvement" with treatment on multiple occasions and by multiple providers (Tr. 193, 875, 2078). Notes from a treating nurse practitioner and occupational therapist state that Plaintiff's headaches are "debilitating when they occur" and that Plaintiff is unable to care for her children or complete activities of daily living when she has a migraine (Tr. 759, 3924). Plaintiff stated that she stopped working in 2014 due to headaches and syncopal episodes and that her conditions caused "the need to miss too many days from work" (Tr. 834, 2212).

**C. Testimony regarding absenteeism**

The ALJ utilized the services of a vocational expert to determine if jobs existed that Plaintiff could perform despite her impairments (Tr. 2263). In a hearing on January 14, 2025, the vocational expert testified that an individual with the RFC set forth by the ALJ

could perform several jobs in the national economy such as optical goods assembler, blower machine tender, and callout operator (Tr. 2263-4). The following questioning then occurred:

> **Q (ALJ):** And if the hypothetical individual were absent from work greater than one day per month due to symptoms, how would that affect those jobs?
>
> **A (Vocational expert):** If it was every month they would not be able to maintain the work.
>
> **Q (ALJ):** And is there any tolerance for additional work breaks? And that's additional breaks in addition to regularly scheduled breaks and lunch periods.
>
> **A (Vocational expert):** It would have to be on a rare occasion. If it was daily, it would be an accommodation.
>
> **Q (ALJ):** So, if even one break in addition to regularly scheduled breaks and lunch occurred daily, that would be enough so that you'd have no work in the national economy. Is that right?
>
> **A (vocational expert):** Yes.

(Tr. 2264). Further testimony included the following exchange:

> **Q (Plaintiff's attorney):** If the hypothetical individual needed a quiet and dark place to lay down at the employer's place, would that be allowable?
>
> **A (Vocational expert):** No. That typically would not be provided by any employer.

(Tr. 2265-6). The ALJ relied on the testimony of the vocational expert when she included the occupations available to an individual with the determined RFC but did not address the vocational expert's testimony that the same individual would not be able to work in those occupations if absent more than one day per month.

**D. Insufficiency of the RFC**

The ALJ did not explicitly link any limitations in the RFC to Plaintiff's chronic migraine headaches other than including that Plaintiff "must avoid work in a loud work environment, defined as noise intensity levels 4 and 5 and louder" (Tr. 2211). A noise limitation alone does not render an RFC determined to be sufficient. *See Ratliff v. O'Malley*,

No. 4:23-CV-431-ACL, 2024 WL 4298538 at *6 (E.D. Mo. Sept. 26, 2024) (remanding for further evaluation of a plaintiff's migraines when the ALJ included a limitation to moderate noise but did not include restrictions for all of plaintiff's alleged migraine symptoms despite failing to articulate inconsistencies between allegations and the evidence in the record); *see also Khadivi v. Kijakazi*, No. 21-05059-CV-SW-WBG, 2022 WL 4117026 at *5 (W.D. Mo. Sept. 9, 2022) (deciding that an RFC that placed limits on noise, simple work, a socially restricted environment, and environmental limitations did not sufficiently address a plaintiff's migraine headaches).

Despite extensive evidence of Plaintiff's history of chronic migraine headaches, the ALJ failed to discuss absenteeism when determining the RFC. *See Wonderly v. Bisignano*, No. 25-00172-CV-W-BP, 2026 WL 613472 at *3 (W.D. Mo. Mar. 4, 2026) (holding that if chronic absenteeism is indicated by a claimant's medical records, that absenteeism must be addressed in the RFC); *see also Long v. Colvin*, No. CIV. 12-4060-KES, 2013 WL 5701640 at *1 (D.S.D. Oct. 18, 2013) (citing *Baker v. Apfel,* 159 F.3d 1140, 1146 (8th Cir. 1998) ("Excessive absenteeism caused by a claimant's impairment has been recognized by the Eighth Circuit as a factor that needs to be considered since at least 1998.").

Although Plaintiff and multiple medical providers stated Plaintiff's migraine headaches were debilitating, the ALJ did not address whether Plaintiff's alleged symptoms would require her to take unscheduled breaks or be absent from work. *Kirchner v. Colvin*, No. C12-2049, 2013 WL 1969878 at *13 (N.D. Iowa May 13, 2013). The ALJ did not address whether Plaintiff's asserted need to lie down in a dark and quiet room when experiencing migraine headaches was consistent with the evidence in the record or the extent to which it may affect her ability to work. *Wynn v. Colvin*, No. 4:23 CV 1264 CDP, 2024 WL 4986971 at *5 (E.D. Mo. Dec. 5, 2024). *See* SSR 19-4p, 2019 WL 4169635, at *8 (S.S.A. Aug. 26, 2019) (requiring an ALJ

assessing a person's primary headache disorder to consider the extent to which the person's impairment-related symptoms are consistent with the evidence in the record). Here, the ALJ failed to identify clear inconsistencies between Plaintiff's migraine-related complaints and the evidence in the record.

Allegations related to migraine headaches are unusual in that the condition "cannot be diagnosed or confirmed through laboratory or diagnostic findings". *Carlson v. Astrue*, No. CIV 09-2547 DWF/LIB, 2010 WL 5113808 at *12 (D. Minn. Nov. 8, 2010) (citations omitted). Therefore, the Court will not consider the ALJ's repeated statements that Plaintiff's neurological examinations were 'normal' as evidence of inconsistency between Plaintiff's complaints and objective medical findings. *See Hahn v. Kijakazi*, No. 1:21-CV-17-SPM, 2022 WL 4534420 at *6 (E.D. Mo. Sept. 28, 2022) ("[A]s courts have frequently recognized, migraine headaches cannot be proven or disproven by physical examinations or objective symptoms."); *see also Teabeau v. Kijakazi*, No. 4:21-CV-00703-NCC, 2022 WL 4598672 at *5 (E.D. Mo. Sept. 30, 2022) (holding that "normal neurological exams are not inconsistent with debilitating migraines"). Normal MRI findings are similarly unpersuasive. *See Riekens v. Kijakazi*, No. 20-CV-1005-LTS-KEM, 2021 WL 5278542 at *4 (N.D. Iowa Aug. 27, 2021) ("[A]n unremarkable MRI is completely consistent with a migraine diagnosis.").

The ALJ acknowledged that Plaintiff has not worked since 2014 but stated that, despite Plaintiff's allegations of pain, Plaintiff "remains able to participate in various typical activities of daily life" (Tr. 2213). However, the ALJ's own recounting includes the fact that Plaintiff can engage in activities "on a good day" and "at times." *Id.* Plaintiff never alleged that she has constant migraines but stated only that her activity is severely limited when migraines do occur. *See Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989) ("[A]

claimant need not prove she is bedridden or completely helpless to be found disabled.”). Plaintiff stated, for example, that she tries getting her daughter ready for school unless a headache interrupts her ability to do so (Tr. 524). Plaintiff also stated that she cannot prepare meals when her head is aching (Tr. 2555). She helps her mother to prepare meals only “if [her] headaches are not too bad” (Tr. 598). Additionally, Plaintiff reported that her mother and sister care for her children when she is unable to do so (Tr. 592). It is entirely possible that Plaintiff suffers from migraine headaches to the extent she alleges *and* can participate in activities of daily living on a limited and unpredictable basis. *See Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) (“This court has repeatedly stated that a person’s ability to engage in personal activities such as cooking, cleaning or a hobby does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity.”) The ALJ did not point to substantial evidence to the contrary.

Regarding medical opinions, the ALJ repeatedly used the same language when evaluating the opinions of multiple consulting providers:

> Consistent with these assertions, the claimant has had audiology testing confirming up to moderate hearing loss, **sought emergency treatment for ongoing headaches, as well as neurology evaluations**, and has a diagnosis of psoriatic arthritis with persistent complaints of pain affecting all of her joints, as well as abdominal pain and symptoms that could be exacerbated by more than sedentary exertion.

(Tr. 2224-6) (emphasis added). The ALJ did not properly evaluate the medical opinions about treatment of Plaintiff’s chronic migraine headaches and did not identify inconsistencies between a consulting provider’s findings and Plaintiff’s allegations regarding the frequency, duration, and intensity of her migraine headaches. *Id*. Plaintiff’s subjective complaints regarding her migraine headaches were not inconsistent with the longitudinal record, and the ALJ should have addressed possible absenteeism when formulating the RFC. The ALJ’s

failure to do so is a sufficient basis for remand. On remand, the ALJ should more thoroughly consider Plaintiff's history of migraine headaches, the status of her migraine headaches, and how her migraine headaches may affect the RFC.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's decision is not supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 30th day of September, 2026.

/s/ Noelle C. Collins

NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE